UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE THOMAS KINKADE COMPANY, f/k/a
MEDIA ARTS GROUP, INC., a California
corporation and RICHARD F. BARNETT,

    Plaintiffs,

    v.

KAREN HAZLEWOOD, JEFF SPINELLO, and
THOMAS KINKADE AT THE DOWNTOWN
MALL, LLC, a Virginia corporation,

    Defendants.

No. C 06 7034 MHP

**MEMORANDUM & ORDER**
**Re: Defendants' Motion for Sanctions**

Plaintiffs The Thomas Kinkade Company ("TKC") and Richard F. Barnett (collectively "plaintiffs") brought this action seeking to vacate an arbitration award issued in favor of Karen Hazlewood, Jeff Spinello and Thomas Kinkade at the Downtown Mall, LLC (collectively "defendants") in October 2006. Separate from plaintiffs' motion to vacate, defendants have filed this motion for sanctions against plaintiffs' counsel arising from conduct during these proceedings. Having considered the arguments of the parties and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

After plaintiffs initiated the action before this court, plaintiffs moved for leave to take limited discovery regarding allegedly fraudulent conduct by defense counsel in connection with their application for attorneys' fees in the underlying arbitration. Docket Entry 79 at 1. The court granted

plaintiffs' motion and approved the scope of the discovery to which the parties agreed at oral argument on the motion. Id. at 6. The ensuing discovery included depositions of former employees of defense counsel's law firm, Norman Yatooma & Associates ("NYA"), including Gina Lepisto.

Ms. Lepisto was deposed on January 25 and January 26, 2007. The deposition was conducted by Dana Levitt on behalf of plaintiffs. Also present were Norman Yatooma and Edward Fisher of NYA. Ms. Lepisto's deposition subpoena included a request for documents. Lepisto Dep., Exh. 33.[1] In response to the document request, Ms. Lepisto produced a two-inch stack of documents, acknowledging that she "did have some documents that [she] didn't feel [were] relevant to this procedure," which she did not produce. Lepisto Dep. at 16:10–23. Ms. Lepisto did not produce any documents until the morning of her deposition. Plaintiffs' counsel apparently had a "coincidental" encounter with Ms. Lepisto in the parking lot at the location of the deposition that morning, but had no previous meetings with plaintiffs' counsel. Id. at 17:17–25. According to defendants, defense counsel arrived for Ms. Lepisto's deposition on time but were made to wait for forty-five minutes before the deposition began. Id. at 288:1–4; Fisher Dec. ¶¶ 5 & 6. Defendants speculate that plaintiffs' counsel used this time to review the documents provided by Ms. Lepisto and meet with Ms. Lepisto. Id. ¶ 6. Plaintiffs' counsel denied this during the deposition. Lepisto Dep. at 289:5–10. Ms. Lepisto testified that she had not previously disclosed any information to plaintiffs' counsel as to the types of documents that she had in her possession or would be producing. Id. at 231:12–16.

During the deposition, plaintiffs' counsel stated the following with respect to the documents:

> MR. LEVITT: All right. For the record, let me say that these documents were produced to me this morning in the conference room. I had no previous opportunity to review the documents and no discussion with Ms. Lepisto about them.
> I asked the Dykema firm to make three copies. And when the witness was —
> MR. FISHER: Three copies?
> MR. LEVITT: Two copies. When the witness was put under oath, that's the first time I had them and that's the first time I had the opportunity to look at them.

Id. at 287:10–21.

2

1	The documents were marked as Exhibit 36, with individual documents further designated by
2	letter. Id. at 116:5–24.  Mr. Fisher requested a copy of the documents at that time, and Mr. Levitt
3	provided him with one. Id. at 115:25–116:8.  Defendants claim that plaintiffs' counsel had refused
4	an earlier request to produce a copy of Ms. Lepisto's documents.  Fisher Dec. ¶¶ 8 & 9.  Mr. Levitt
5	does not recall any such request and no earlier request or refusal is reflected in the deposition
6	transcript.  Levitt Dec. ¶ 3.  Rather, when Ms. Lepisto first mentioned the documents she was
7	producing, Mr. Fisher requested copies only of the document subpoena and the deposition notice.
8	Lepisto Dep. at 16:10–17:5.

9	Mr. Levitt proceeded to examine Ms. Lepisto on the documents comprising Exhibit 36.
10	Defense counsel raised no objections until Exhibit 36L was marked.  At this point, Mr. Fisher
11	objected on the basis that the document pertained to NYA clients having nothing to do with the
12	instant action, and that the document "perhaps" contained attorney-client privileged information. Id.
13	at 162:16–23.  Mr. Fisher additionally stated that the document "may be work product as well." Id.
14	at 162:25–163:1.  Mr. Levitt stated that he "d[id]n't disagree with" Mr. Fisher's objection, and
15	agreed to make his questions "really simple and direct." Id. at 163:2–8.  Mr. Levitt proceeded to
16	question Ms. Lepisto regarding the document over occasional objections by Mr. Fisher, including
17	objections based on the possibility of attorney-client privileged information being contained in
18	Exhibit 36L.

19	After Mr. Levitt had finished his examination of Ms. Lepisto, Mr. Fisher proposed placing a
20	phone call to the court for a ruling as to whether the Exhibit 36L should be retained by plaintiffs'
21	counsel "since it goes beyond the scope of the subpoena." Id. at 206:7–13.  Mr. Levitt replied that
22	he was not interested in information unrelated to Media Arts clients, and agreed to allow defense
23	counsel to redact the document. Id. at 206:13–20.  A brief argument ensued over whether Mr. Levitt
24	or the court reporter would be able to retain an unredacted copy of Exhibit 36L while defense
25	counsel redacted the document. Id. at 207–209.  Following the argument, the following exchange
26	took place:

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

3

> MR. YATOOMA: So you would like not to call the Court?
> MR. LEVITT: You want to call the Court, you can. I will be sure and tell her what the status is right now, which is that you have made a proposal that I return the document to you and allow you to redact it — to redact everything not having to do with Media Arts, and I have said I will consider that and tell you by the end of the day. I mean, I don't know what else you want.
> MR. YATOOMA: Well, you can have your consideration as to whether you think it is appropriate to keep privileged information that does not relate to you or anybody regarding these proceedings, and then if your consideration leads you to believe that you should violate the canons, then we will call the Court.
> MR. LEVITT: Go ahead, Mr. Fisher. You're up.

Id. at 209:15–210:6. Mr. Fisher then began his examination of Ms. Lepisto.

At the close of the first day of the deposition, Mr. Levitt returned some of the Lepisto documents to defense counsel but retained other materials for overnight review. Levitt Dec. ¶ 4. According to plaintiffs' counsel, Mr. Levitt reviewed only as much of the documents as was necessary to determine if they were arguably privileged, took no notes regarding the documents, and did not make copies of the documents. Id. ¶ 5. Mr. Levitt returned the privileged documents to Mr. Yatooma the following morning, and claims to remember nothing about their contents. Id.

At the beginning of the second day of the deposition, Mr. Levitt made the following statement on the record:

> I have had the opportunity to briefly review those documents between yesterday evening and this morning, and with respect to most of them, I am going to agree with Mr. Yatooma and Mr. Fisher that they are privileged and I'm going to return them. I'm going to identify them on the record and any copies that I have I will return.

Lepisto Dep. at 299:2–8. Mr. Levitt then identified Exhibits 36A, 36Q, 36R, and portions of Exhibit 36 that had not previously been separately identified.

In response, Mr. Yatooma made several comments, including the following:

> [W]hile we believe this serves to mitigate the problem, it does not cure the problem because the documents that you are returning, you have, as you say, reviewed and determined that indeed they are privileged. The basis for our objection was because we do not believe it is for you to review and determine the privilege, it is for a court to review and determine the privilege, and therefore, you have already, as opposing counsel on many ongoing matters, been made privy to privileged matters.

Id. at 304:17–305:2.

Defendants' motion focuses principally on Exhibit 36A, which consists of attorney notes regarding an earlier deposition during the arbitration proceeding. Although defendants argue that this document is clearly privileged on its face, the record reflects that defense counsel failed to object to the inclusion of the document at the time it was marked during Ms. Lepisto's deposition. Defendants also mention a second document containing a cross-examination outline related to the underlying arbitration. Again, defense counsel did not object to this document during the deposition in this matter.

Following the exchange regarding the privileged materials during Ms. Lepisto's deposition, plaintiffs' counsel and defense counsel apparently reached an agreement regarding the use of Ms. Lepisto's materials in subsequent proceedings, though the parties disagree as to the terms of that agreement. During the deposition, Mr. Levitt stated that he had agreed to

> allow Mr. Fisher and Mr. Yatooma to review Ms. Lepisto's deposition transcript, [and] propose the portions that they think should be stricken. If I agree that those portions are, in fact, not relevant to the fee application and Media Arts, then they can be stricken. So the only area of disagreement that we have is what exactly fits within that category.

Id. at 302:10–17. Mr. Levitt further stated that he was "reluctant to agree in the abstract," and "would like to see some concrete examples." Id. at 302:17–19.

The final exchange regarding the agreement was as follows:

> MR. YATOOMA: [. . .] [W]hat we are in agreement on is that anything unrelated to the Hazlewood fee application will be stricken from the record. What we have yet to agree on is what exactly those subject matters are that are unrelated to the Hazlewood fee application.
> MR. LEVITT: I agree with that, Mr. Yatooma, so long as you and I are in agreement that the phrase "Hazlewood fee application" is broadly understood as the motion to confirm and the motion to vacate the arbitration award of which the attorneys' fees application is part.
> MR. YATOOMA: By way of example, a good indication of those things unrelated to the Hazlewood fee application would be comprised in the documents that have already been returned.
> MR. LEVITT: That's probably true.
> MR. YATOOMA: Mr. Fisher, have I missed anything?
> MR. LEVITT: So we are in agreement here? Yes?
> MR. YATOOMA: Yes.
> MR. LEVITT: Fine.

5

Id. at 308:2–25.

On February 12, 2007 the court ordered that plaintiffs' brief regarding the attorneys' fees award be filed by March 12, 2007. Docket Entry 91. Plaintiffs filed their brief and supporting declarations on March 12, including a complete, unredacted transcript of the Lepisto deposition. Docket Entries 119–122. At no time during the six weeks between the conclusion of the Lepisto deposition and the filing of plaintiffs' brief did defense counsel propose any redactions to plaintiffs' counsel. Levitt Dec. ¶ 6. However, defendants now claim that plaintiffs should have redacted the following information from the Lepisto deposition transcript prior to filing it with this court: (1) any and all references to non-TKC clients, (2) any and all references to For The Kids Foundation, Inc., a non-profit organization founded by Mr. Yatooma, along with its fundraising efforts, accounting practices and employees, (3) any and all references regarding NYA's accounting firm and its communications with NYA, and (4) any and all references regarding the personal expenses and business interests of Mr. Yatooma. Mot. at 9.

Defendants filed the instant motion on April 27, 2007, three months after the conclusion of the deposition. Defendants assert that plaintiffs' counsel has committed the following ethical violations: (1) "receiv[ing] and review[ing] materials that were clearly confidential in nature and concerned the subject matter of the pending proceeding as well as other TKC-related matters," including receipt and review of "Defendants' counsel's notes, personal impressions, litigation strategy and deposition outlines, as well as client bills to other NYA clients and other clearly privileged materials"; and (2) "flagrantly violat[ing] an agreement among counsel placed 'on the record' . . . that anything unrelated to the instant proceeding would be stricken from the record and that material so stricken would not be introduced as part of the briefs in this proceeding." Id. at 10. Defendants seek disqualification, monetary sanctions or a public admonishment.

6

LEGAL STANDARD

"The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers." Visa U.S.A., Inc. v. First Data Corp., 241 F. Supp. 2d 1100, 1103–04 (N.D. Cal. 2003) (Hamilton, J.) (citing United States v. Wunsch, 84 F.3d 1110, 1114 (9th Cir. 1996)). A motion to disqualify counsel in the Northern District of California is governed by California state law regarding attorney conduct. Id.; Image Technical Servs., Inc. v. Eastman Kodak Co., 820 F. Supp. 1212, 1215 (N.D. Cal. 1993). California law likewise vests the decision as to whether or not to disqualify counsel within the discretion of the trial judge. Id. (citing Truck Ins. Exch. v. Fireman's Fund, 6 Cal. App. 4th 1050, 1055 (1992)). Motions seeking to disqualify counsel are "strongly disfavored" and "should be subjected to particularly strict judicial scrutiny." Visa U.S.A., 241 F. Supp. 2d at 1104 (internal quotations omitted).

California courts "have consistently concluded that mere exposure to confidential information of the opposing party does not require disqualification." Neal v. Health Net, Inc., 100 Cal. App. 4th 831, 841 (2002). Rather, disqualification of an attorney is appropriate "when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court." Gregori v. Bank of Am., 207 Cal. App. 3d 291, 300 (1989). Furthermore, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." Id. at 308. In the context of exercise of inherent sanctioning power, federal courts generally require "a finding of bad faith, or conduct tantamount to bad faith." Gomez v. Vernon, 255 F.3d 1118, 1134 (9th Cir. 2001).

DISCUSSION

I.   Timeliness

As a threshold matter, plaintiffs assert that defendants' motion should be dismissed as untimely. Under the applicable Local Rules, a motion for sanctions "must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion

7

appropriate." Civ. L.R. 7-8(c). Here, much of the conduct underlying defendants' motion occurred during a deposition proceeding three months before this motion was filed. The final challenged act—filing the unredacted transcript with the court—occurred six weeks before the motion was filed. Defendants' brief does not account for this delay and offers no reason why the motion could not have been filed sooner. The fact that the basis for the motion was explained at length by Mr. Yatooma and Mr. Fisher during Ms. Lepisto's deposition further supports a finding that this motion could have been brought much earlier.

While delays such as this are not necessarily unreasonable, the timing of the motion within the context of this proceeding is troubling. Defendants' motion was filed after nearly all of the substantive briefing and argument had been completed. The only events of significance that took place after the motion was filed were the oral argument on the portion of plaintiffs' motion to vacate regarding attorneys' fees, and the filing of plaintiffs' additional supplemental brief regarding the initial motion to vacate. If defendants seek by this motion to retroactively disqualify plaintiffs' counsel from this action, the delay in bringing the motion is extremely prejudicial. Furthermore, it is not clear what defendants would gain from a forward-looking disqualification.

Defendants' main concern appears to be the effects of plaintiffs' counsel's exposure to privileged material on other proceedings involving plaintiffs' counsel and NYA. This court almost certainly lacks jurisdiction to preclude plaintiffs' counsel from appearing in actions not before this court. Attempts to disqualify plaintiffs' counsel from other proceedings are properly directed toward the adjudicators in those actions.

Bearing in mind the suspicions raised by the timing of this motion, the court proceeds to the merits of defendants' claims.

II. Conduct During the Deposition

The only arguable basis for defendants' motion arising from the conduct during the deposition is plaintiffs' counsel's handling of the documents produced by Ms. Lepisto. No sanctions may be imposed for lines of questioning that allegedly covered confidential or irrelevant subject

8

matter. With respect to relevancy, in particular, it is curious that defendants now complain about plaintiffs' counsel's questioning regarding the For The Kids Foundation, when defendants themselves cited this testimony in their own prior pleadings in order to undermine Ms. Lepisto's credibility. Additionally, absent a protective order, counsel was entitled to question Ms. Lepisto as to confidential matters.[2]

Turning to Ms. Lepisto's documents, defendants have demonstrated no misconduct at all on the part of plaintiffs' counsel, let alone the level of egregious conduct that would justify the extraordinary sanction of disqualification. First, there is no evidence that plaintiffs' counsel reviewed the documents prior to Ms. Lepisto's deposition. Nothing in the record contradicts plaintiffs' counsel's assertions—reflected in the deposition transcript and declarations before this court—that plaintiffs' counsel saw the documents for the first time at the beginning of the deposition. Nor is there any evidence to support defendants' allegation that plaintiffs' counsel met with Ms. Lepisto before the deposition began.

Second, to the extent that defense counsel raised privilege-based objections during the deposition, plaintiffs' counsel was responsive. Mr. Fisher was provided with a copy of Exhibit 36 as soon as he asked for one. Despite their current contention that many of the documents comprising Exhibit 36 are "clearly" privileged, defense counsel raised no privilege objections until Mr. Levitt marked Exhibit L, the twelfth set of documents in the exhibit. In response to Mr. Fisher's objection, Mr. Levitt agreed to limit his questioning. Defense counsel appears to have objected to only one other document on privilege grounds at the time of the deposition. Lepisto Dep. at 201:15–25. In response to this objection, Mr. Levitt immediately agreed not to question Ms. Lepisto about the document or mark it as an exhibit based on a representation by Mr. Yatooma that the document was a letter to Mr. Yatooma from one of his clients. Id. at 202:5–14. Defense counsel's specific objections regarding privileged material in Exhibit 36 were not raised until the end of the first deposition day, after Ms. Lepisto had left. Id. at 286–87. As for defense counsel's desire to seek court intervention, plaintiffs' counsel did not prevent them from doing so, and Mr. Yatooma

9

ultimately decided that he would call the court if it appeared that Mr. Levitt was committing an ethical breach. The court did not receive any such call.

Regarding Mr. Levitt's review of the portions of Exhibit 36 over defense counsel's objection, the court finds that Mr. Levitt's behavior was reasonable. The Ninth Circuit, citing two Formal Opinions of the ABA Committee on Ethics and Professional Responsibility, has drawn a distinction between materials that appear on their face to be privileged and materials that an attorney knows to be privileged or confidential. Gomez, 255 F.3d at 1132. Regarding the former category, the attorney "should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them." Id. (quoting ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 368 (1992)). Regarding the latter category, the attorney "should, upon recognizing the privileged or confidential nature of the materials, either refrain from reviewing such materials *or review them only to the extent required to determine how appropriately to proceed . . . .*" Id. (quoting ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 382 (1994)).

In light of defense counsel's failure to raise any privilege objection until much of Exhibit 36 had already been marked and subject to questioning, defendants have not made a satisfactory showing that the materials in question were facially privileged. Accordingly, Mr. Levitt was entitled to perform a limited review for the purposes of determining whether the materials should be returned. Because neither defense counsel nor plaintiffs' counsel had the opportunity to review the materials before the deposition, plaintiffs' counsel was not required to accept defense counsel's opinion regarding the materials and refrain from reviewing them. This is particularly true in light of the expedited nature of the discovery in this action and the need to prepare for additional deposition proceedings the following day. See Gregori, 207 Cal. App. 3d at 300 (holding that, in reviewing a motion to disqualify counsel, "the trial court must make a reasoned judgment and comply with the legal principles and policies appropriate to the particular matter at issue") (internal quotations omitted).

Given Mr. Levitt's representations that he reviewed the materials only to the extent necessary to determine privilege, and did not copy or otherwise retain information related to the

privileged materials, defendants have not "satisfactorily established" that plaintiffs' counsel's actions were improper.

### III. Breach of Agreement

Defendants additionally claim that plaintiffs' counsel violated an agreement between plaintiffs' counsel and defense counsel by submitting an unredacted transcript of the Lepisto deposition. This contention merits little discussion. The record unambiguously shows that, while Mr. Levitt and Mr. Yatooma agreed in principle that certain material could be stricken from the transcript, the matter of *which* materials would be stricken was expressly left unresolved at the close of the deposition. Mr. Levitt indicated that he would allow defense counsel to propose redactions. Defense counsel never did so. Mr. Levitt breached no agreement by filing the complete transcript after hearing nothing from defense counsel for six weeks regarding material to be stricken.

### IV  Sanctions

Defendants have clearly not made the necessary showing to warrant the extreme sanction of disqualification. Nor have defendants demonstrated bad faith on the part of plaintiffs' counsel warranting monetary sanctions or a public admonishment.

### CONCLUSION

For the reasons stated above, the court DENIES defendants' motion for sanctions.

IT IS SO ORDERED.

Dated: June 5, 2007

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

**ENDNOTES**

1. Ms. Lepisto's deposition transcript, with redacted exhibits, was attached in its entirety as Exhibit 3 to the Declaration of Dana N. Levitt in support of plaintiffs' motion to vacate the award of attorneys' fees.

2. It was not immediately apparent during the deposition that Ms. Lepisto's production breached any confidentiality. Ms. Lepisto testified that she never signed a confidentiality agreement when she became an employee at NYA. Lepisto Dep. at 43–44, 251:11–12. Ms. Lepisto also testified that she had not produced any documents that she did not feel were relevant to the procedure. Id. at 16:21–23.

**UNITED STATES DISTRICT COURT**
For the Northern District of California